Physicians had declared testatrix to be in an advanced stage of paresis, with no lucid intervals. Immediately thereafter the principal and residuary legatee discharged her physician, and took charge of testatrix, employing for her their own physician. Two weeks thereafter testatrix executed a will prepared by the husband of one beneficiary and the son-in-law of the other. Under this will the then attending physician was made executor, and it was witnessed by such physician and the attorney, and by servants who were either made legatees under the will or were employed by the residuary legatee. *Held*, that the will was the result of undue influence.

**2. SAME—MENTAL CAPACITY.**

The evidence was also sufficient to show mental incapacity on the part of the testatrix.

In the matter of the probate of the will of Charlotte Miller, deceased. Probate refused.

William S. Katzenstein, for petitioner.

Thompson & Koss, Theodore Sutro, Leslie & Miner, and Thompson & Maloney, for contestants.

THOMAS, S. The decedent was examined on February 6, 1901, by two physicians, both of whom then concluded that she was in an advanced stage of paresis or general paralysis of the insane, a disease which permits no subsequent lucid intervals. One of these physicians had treated her for years, and had long had opportunities for close observation of her condition. The other was an eminent specialist in diseases of this character, and his qualification to form and express an opinion of mental capacity was formally conceded upon the record. The opinion thus formed was not concealed, but was promptly communicated to the person now claiming the bulk of the fortune of the deceased, as residuary devisee and legatee, and to her husband. Immediately thereafter, and about February 8th, the physician holding this opinion was refused admission to the house of the decedent, and informed that his services were no longer required. The residuary beneficiary and her husband left their own home in this city, and went to reside with the decedent, and their own family physician was called in. On the evening of February 19th a conference of most of the parties interested in the resultant will, none of whom are in any degree related to the decedent, was had with the decedent on the subject of making her will. At that time she lay on her bed while the others gathered around her. On the following morning the attorney, who is the husband of one of the beneficiaries and the son-in-law of another, was able to prepare the elaborate will now offered for probate, without further instructions from the decedent, and it was executed by her within 15 or 20 minutes after it had been drafted. By this will the physician then in attendance upon the decedent was named as executor, and a direction was made that the attorney be employed to conduct the legal business of the estate.

and they two became the principal subscribing witnesses. Other witnesses were found in three servants, two of whom were made legatees and the other was in the employ of the residuary legatee. On March 2d the decedent died.

On all of the evidence I am not satisfied that the decedent was of sufficient testamentary capacity. The evidence offered by the contestants on this issue was most direct and persuasive, and the effort made by the proponent to rebut it was not successful. Having in mind the facilities the proponents had for proving by disinterested witnesses acts and declarations of the decedent during the disputed period, showing any intelligence whatever, if such acts or declarations had been performed or made, the character of the evidence on this subject is noticeably weak, unreliable, and inconclusive. I may add that some of the witnesses who testified for the proponents on this branch of the case were not believed by me to be trying to tell the truth. I allude particularly to the two young women from Mount Vernon and the woman residing next door to the decedent.

On the issue of undue influence, I must also determine against the probate. Even if the mind of the decedent was not utterly gone on the 8th of February, 1901, when the principal legatee and her husband took charge of her, it was certainly weakened so as to make her an easy subject for improper influence. I will find as a fact that such influence was used. The probate of the paper offered will be refused. Costs to contestants will be awarded out of the estate.

Probate refused. Costs to contestants awarded out of estate.